### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| RIDUCO, S.A., a Colombia Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. |
| v. | ) | |
| | ) | |
| GLOBAL MARINE TRANSPORTATION | ) | FILED COPY: MAY 23, 2008 |
| INC., a New York Corporation; MAERSK | ) | 08CV3008   EDA |
| LINE LTD, a Delaware Corporation; | ) | JUDGE LINDBERG |
| NORFOLK SOUTHERN CORPORATION, | ) | MAGISTRATE JUDGE BROWN |
| a Virginia Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

### COMPLAINT

Plaintiff, Riduco, S.A., by and through its attorneys, Joseph P. McCaffery & Associates, complains against Global Marine Transportation, Inc., Maersk Line, LTD, and Norfolk Southern Corporation, and states as follows:

### PARTIES

1. Plaintiff Riduco, S.A. (hereinafter, Riduco) is a manufacturer of plastic and metal products, incorporated in the nation of Colombia, and is a citizen of Colombia pursuant to 28 U.S.C. § 1332.

2. Defendant Global Marine Transportation (hereinafter, Global Marine) is a freight transportation broker, incorporated in the state of New York, and is a citizen of New York pursuant to 28 U.S.C. § 1332.

3. Defendant Maersk Line LTD (hereinafter, Maersk) is an international shipping company, incorporated in the state of Delaware, and is a citizen of Delaware pursuant to 28 U.S.C. § 1332.

4. At the time relevant to this action, Defendant Maersk owned, or in the alternative, was known as, Maersk Sealand, Inc.

5. Defendant Norfolk Southern Corporation (hereinafter, Norfolk Southern) is a railroad incorporated in the state of Virginia, and is a citizen of Virginia pursuant to 28 U.S.C. § 1332.

1

## JURISDICTION AND VENUE

6.  This Court has original subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1332, as there exists complete diversity of citizenship among Plaintiff and all Defendants and the amount in controversy exceeds $75,000.00.

7.  Defendants are subject to the jurisdiction of this Court pursuant to 735 ILCS 5/2-209(a)(7), as each has acted in the making or performance of a contract or promise substantially connected with the State of Illinois relevant to this case.

8.  Jurisdiction is proper before this Court as each Defendant has minimum contacts with the State of Illinois.

9.  Venue is proper pursuant to 28 U.S.C. § 1391(a).

## FACTS

10. In May 2006, Plaintiff purchased a Toshiba Machine Co. industrial plastics injection molding machine ("Machine") from Best Used Machinery Co. (hereinafter, BUMCO), a dealer of new and used machinery located in Aurora, Illinois.  At that time, the Machine was located in Vandalia, Ohio.

11. On or before May 19, 2006, Defendant Global Marine arranged transport of the Machine from Vandalia, OH to Cartagena, Colombia with Defendant Maersk.

12. The Machine was in multiple pieces at the time of shipment, and shipment was made in multiple containers.

13. One of the containers carrying parts of the Machine was MSKU9138491.

14. On or before May 19, 2006, Defendant Maersk arranged for overland transportation of container MSKU 9138491 with Norfolk Southern.

15. At some time between May 22 and May 25, 2006, one or more Defendants caused container MSKU 9138491 to be picked up and loaded on Norfolk Southern train #223 bound for Charleston, South Carolina.

16. On May 26, 2006, at 9:30pm EDT, seven cars of that Norfolk Southern train, including the car carrying container MSKU 9138491, derailed near Oakdale, Roane County, Tennessee.

17. As a result of that derailment, container MSKU 9138491 fell from the train and into the Emory River, sustaining substantial damage.

18. According to initial reports from Norfolk Southern to Global Marine, approximately 30% of the cargo from container MSKU 9138491 was salvageable, with the remainder having fallen down an embankment and into the Emory River.

19. Thereafter, Norfolk Southern salvaged a portion of the contents of container MSKU 9138491 from the river, placed salvaged contents in a new container, and sent that container to an unknown nearby location.

20. The Plaintiff was not notified of the derailment until June 12, 2006.

21. Prior to its arrival in Atlanta, Georgia, Norfolk Southern prohibited Plaintiff from making an inspection of the salvaged contents of container MSKU 9138491.

22. Norfolk Southern then transported the remaining contents of container MSKU 9138491 in a new container to Atlanta, Georgia, at which time Norfolk Southern allowed Riduco and Toshiba, the manufacturer, to inspect the salvaged parts.

23. Upon inspection, Riduco learned that various pieces of the Machine were damaged, and that some parts specified on the packing list were in fact missing.

24. Thereafter, Defendants caused the Machine to be delivered to Riduco in Colombia.

25. Riduco received the damaged and/or missing parts, and as a result, the Machine was not operational.

26. After assessing the damage, Riduco requested and received a quote from Toshiba Machine Co. as to the replacement cost for those damaged and missing parts.  Toshiba quoted a price of $131,950.00 for replacement; however, many of those parts were not available in stock at that time and would require several months lead time to manufacture and additional time for delivery to the Plaintiff.

27. For several months thereafter, Plaintiff proceeded to repair the Machine via the following:

    a.  purchasing and installing new replacement parts;

    b.  purchasing and installing aftermarket replacement parts when new parts from the original manufacturer were not available;

    c.   making in-house repairs on other parts when possible.

28. Despite Plaintiff's best efforts, the Machine remained non-operational for more than five months after delivery.

29. As a result of the Machine remaining non-operational, Riduco lost more than five months of revenue that otherwise would have been gained from the Machine being in operational condition.

30. In addition, the ongoing utility and expected life-cycle of the machine may be impaired due to the differences in configuration of the machine as ordered and the machine as repaired.

31. During the period between June 2006 and December 2006, Riduco was in contact with Global Marine Transportation regarding recovery of the value of damages to the Machine.

32. On information and belief, at some point during that period, Global Marine Transportation submitted a claim to Maersk for those damages and was assigned claim number 42744/JR. No payments arising from said claim have been paid to Riduco.

33. Thereafter, in November or December 2006, Maersk submitted a claim to Norfolk Southern for those damages and was assigned claim number 838578 I. Norfolk Southern failed to pay either Maersk or Riduco under that claim.

## COUNT 1 – BREACH OF CONTRACT – GLOBAL MARINE

34. Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 33 of this Complaint as if set forth fully herein.

35. On or before May 19, 2006, Plaintiff contacted Global Marine to arrange for shipment of the Machine from its location at Vandalia, Ohio to Cartagena, Colombia.

36. During these conversations, Plaintiff agreed to pay Global Marine to ship the Machine.

37. In exchange for Plaintiff's promise to pay, Global Marine agreed to arrange for shipment of the Machine to Cartagena.

38. In agreeing to arrange for shipment of the Machine, Global Marine implicitly agreed to enter into contractual relationships with certain shippers to carry the Machine to its destination for the benefit of the Plaintiff.

39. In addition, Global Marine agreed to purchase insurance for the shipment of the Machine, with said insurance charges being passed along to the Plaintiff.

40. Global Marine and Plaintiff agreed that Global Marine would issue invoices to Plaintiff for services arranged by Global Marine.

41. On information and belief, Global Marine contracted with either Maersk, Norfolk Southern, or both, for the shipment of the Machine.

42. Global Marine submitted several invoices to the Plaintiff containing charges for the shipment of the Machine.

43. Plaintiff paid all of the invoices submitted by Global Marine.

44. After Train #223 derailed, Global Marine failed to perform its agreed upon duties in the following ways:

    a. Failing to notify the Plaintiff immediately regarding the accident;

    b. Failing to adequately pursue claims for the damage arising out of its contracts with Maersk and/or Norfolk Southern;

    c. Failing to apprise the Plaintiff of its rights under the insurance policy covering the shipment; and

    d. Failing to inform the Plaintiff of the procedure by which to submit a claim under the insurance policy contracted for this shipment.

45. As a result of these failures, the Plaintiff has been damaged in the following ways:

    a. Repair costs for the Machine, including the costs of fabricating replacement parts, purchasing replacement parts, and repair costs;

    b. Lost use of the Machine for the period it was being repaired and was unusable;

    c. Preclusion of claim under the insurance policy covering the shipment;

    d. Denial of claims by Norfolk Southern; and

    e. Denial of claims by Maersk.

Wherefore, the Plaintiff respectfully requests that this Honorable Court:

a) Enter judgment in favor the Plaintiff against Global Marine;

b) Award the Plaintiff monetary damages in the amount of $130,000 plus costs and attorney's fees; and,

c) Enter any other relief the Court deems fit to grant.

## COUNT 2 – NEGLIGENCE – GLOBAL MARINE

46. Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1-45 of this Complaint as if set forth fully herein.

47. When Global Marine arranged for the transport of the Machine, it was exercising physical control over the Machine for the benefit of the Plaintiff, thus creating a bailment in the Machine.

48. As a bailee, Global Marine had a duty of care to the Plaintiff in regard to the Machine.

49. Global Marine's duty of care extended to ensuring that all necessary subcontracts for the shipment of the Machine adequately protected the Plaintiff's property.

50. In addition, Global Marine's duty of care included the duty to pursue whatever contractual remedies existing with its subcontractors in relation to any damage to the Plaintiff's property during shipping.

51. Further, Global Marine's duty of care required it to purchase adequate insurance for the shipment and to communicate the terms and conditions of that insurance to the Plaintiff.

52. As stated above, Global Marine failed to pursue its contractual remedies in relation to the damage to the Plaintiff's property and failed to notify the Plaintiff of the mechanism for filing a claim under the shipping insurance purchased by Global Marine.

53. As a result of Global Marine's actions, Maersk and Norfolk Southern have denied claims for the damage to the Machine.

54. In addition, the Plaintiff has had to incur the costs of repairs to the machine as detailed above without the benefit of the insurance policy to defray the costs.

Wherefore, the Plaintiff respectfully requests that this Honorable Court:

a)  Enter judgment in favor the Plaintiff against Global Marine;

b)  Award the Plaintiff monetary damages in the amount of $130,000 plus costs and attorney's fees; and,

c)  Enter any other relief the Court deems fit to grant.

## COUNT 3 – NEGLIGENCE – NORFOLK SOUTHERN

55. Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 54 of this Complaint as if set forth fully herein.

56. On information and belief, on or before May 22, 2006, either Global Marine or Maersk entered into a contract with Norfolk Southern for the transportation of container MSKU 9138491, with the Plaintiff as the express third-party beneficiary of their contract.

57. Defendant Norfolk Southern operated train #223, and was in control of all material aspects of its operation.

6

58. Defendant Norfolk Southern owed a duty of care to the Plaintiff to safely carry the Plaintiff's cargo, as the Plaintiff was the third-party beneficiary of the contract between Global Marine and/or Maersk and Norfolk Southern for the transportation of the Machine.

59. The derailment of train #223 could not have happened in the absence of a breach of Defendant Norfolk Southern's duty of care.

60. As a result of the derailment of train #223, the Plaintiff's cargo fell into the Emory River, sustaining substantial damage and loss of parts.

61. The loss of the Machine caused the Plaintiff to incur costs in fabricating replacement parts, purchasing replacement parts, costs in repairing the machine, and from lost revenue during the time the Machine was inoperable.

Wherefore, the Plaintiff respectfully requests that this Honorable Court:

a)   Enter judgment in favor the Plaintiff against Norfolk Southern;

b)   Award the Plaintiff monetary damages in the amount of $130,000 plus costs and attorney's fees; and,

c)   Enter any other relief the Court deems fit to grant.

## COUNT 4 – BREACH OF CONTRACT – MAERSK

62. Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 61 of this Complaint as if set forth fully herein.

63. As stated above, Global Marine contracted with Maersk for the shipment of certain parts which were subsequently placed into container MSKU 9138491.

64. The above specified contract was explicitly entered into by Global Marine for the benefit of the Plaintiff.

65. On information and belief, among Maersk's duties under the contract with Global Marine were duties to transport container MSKU 9138491 unharmed and to promptly honor any claims made against it for any damage that did occur to the contents of container MSKU 9138491 while in shipment.

66. Global Marine, on behalf of the Plaintiff, paid Maersk the contracted for shipping price for container MSKU 9138491.

67. After the damage to the contents of container MSKU 9138491 was discovered, Global Marine filed a claim with Maersk for the damages.

68. Maersk failed to perform its duties by allowing container MSKU 9138491 to be damaged while in transit and by failing to honor the claims made by Global Marine on behalf of the Plaintiff.

69. As a result of Maersk's failure to perform its duties, the Plaintiff has been forced to incur repair costs and diminished use of the Machine without any compensation for the damages.

Wherefore, the Plaintiff respectfully requests that this Honorable Court:

    a) Enter judgment in favor the Plaintiff against Norfolk Southern;

    b) Award the Plaintiff monetary damages in the amount of $130,000 plus costs and attorney's fees; and,

    c) Enter any other relief the Court deems fit to grant.

### COUNT 5 – BREACH OF CONTRACT – NORFOLK SOUTHERN

70. Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 69 of this Complaint as if set forth fully herein.

71. As stated above, Global Marine and/or Maersk contracted with Norfolk Southern for the shipment of container MSKU 9138491 on train #223 to Charleston, South Carolina.

72. The above specified contract was explicitly entered into by Global Marine and/or Maersk for the benefit of the Plaintiff.

73. On information and belief, Norfolk Southern's duties under the contract included a duty of care when transporting the cargo, a duty to allow prompt inspection of any damages to the cargo, as well as a duty to promptly honor any claims made for damages to the cargo.

74. As stated above, after the train derailed and container MSKU 9138491 was damaged, Norfolk Southern prevented any inspections of the damaged cargo until several days after the incident.

75. Further, as stated above, Norfolk Southern has denied the claims made by Maersk on behalf of Global Marine and the Plaintiff for the damages.

76. As a result of Norfolk Southern's failure to perform its duties, the Plaintiff has been forced to incur repair costs and diminished use of the Machine without any compensation for the damages.

Wherefore, the Plaintiff respectfully requests that this Honorable Court:

    a) Enter judgment in favor the Plaintiff against Norfolk Southern;

b) Award the Plaintiff monetary damages in the amount of $130,000 plus costs and attorney's fees; and,

c) Enter any other relief the Court deems fit to grant.

## JURY DEMAND

Plaintiff hereby demands a jury trial on the above counts.

Plaintiff Riduco, S.A.

_____/s/_____

By Joseph P. McCaffery

*Prepared by:*
Joseph P. McCaffery
Joseph P. McCaffery & Associates
2210 Sandburg Dr.
Aurora, IL 60506
(630)801-8691
IARDC#6206097