### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| RIDUCO, S.A., a Columbia Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08 C 3008 |
| | ) | |
| GLOBAL MARINE TRANSPORTATION | ) | Judge Brown |
| INC., a New York Corporation; MAERSK | ) | |
| LINE LTD., a Delaware Corporation; | ) | |
| NORFOLK SOUTHERN RAILWAY, | ) | |
| INC., a Virginia Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

### ANSWER AND AFFIRMATIVE DEFENSES TO AMENDED COMPLAINT

Now comes Defendant, Norfolk Southern Railway Company ("Norfolk Southern"), by

its undersigned attorneys, in response to the amended complaint of Plaintiff, Riduco, S.A., and

answers as follows:

### PARTIES

1. Plaintiff Riduco, S.A. (hereinafter, Riduco) is a manufacturer of plastic and metal products, incorporated in the nation of Columbia, and a citizen of Columbia pursuant to 28 U.S.C. § 1332.

   **Answer:**   This Defendant does not contest the allegations of this paragraph.

2. Defendant Global Marine Transportation (hereinafter, Global Marine) is a freight transportation broker, incorporated in the state of New York, and is a citizen of New York pursuant to 28 U.S.C. § 1332.

   **Answer:**   This Defendant does not contest the allegations of this paragraph.

Z:\ns\riduco\answer.wpd

3.  Defendant Maersk Line LTD (hereinafter, Maersk) is an international shipping company, incorporated in the state of Delaware, and is a citizen of Delaware pursuant to 28 U.S.C. § 1332.

    **Answer:**  This Defendant does not contest the allegations of this paragraph.

4.  At the time relevant to this action, Defendant Maersk owned, or in the alternative, was known as, Maersk Sealand, Inc.

    **Answer:**  This Defendant does not contest the allegations of this paragraph.

5.  Defendant Norfolk Railway, Inc. (hereinafter, Norfolk Southern) is a railroad incorporated in the state of Virginia, and is a citizen of Virginia pursuant to 28 U.S.C. § 1332.

    **Answer:**  Norfolk Southern Railway Company, sued as Norfolk Southern Rail-

    way, Inc., is a railroad incorporated under the laws of the State of Virginia and

    is a citizen of Virginia as defined in 28 U.S.C. § 1332.

## JURISDICTION AND VENUE

6.  This Court has original subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1332, as there exists complete diversity of citizenship among Plaintiff and all Defendants and the amount in controversy exceeds $75,000.00.

    **Answer:**  Admitted.

7.  Defendants are subject to the jurisdiction of this Court pursuant to 735 ILCS 5/2-209(a)(7), as each has acted in the making of performance of a contract or promise substantially connected with the State of Illinois relevant to this case.

    **Answer:**  Denied as to this Defendant.

8.  Jurisdiction is proper before this Court as each Defendant has minimum contacts with the State of Illinois.

    **Answer:**  Admits that this Defendant has minimum contacts with the State of

    Illinois, and, in further answering, states that the Intermodal Transportation

    Contract between Maersk and Norfolk Southern provides for litigation and adjudi-

    cation of disputes in the State of Illinois.

9.    Venue is proper pursuant to 28 U.S.C. § 1391(a).

    **Answer:**    Admitted.


## FACTS

10.    In May 2006, Plaintiff purchased a Toshiba Machine Co. industrial plastics injection molding machine ("Machine") from Best Used Machinery Co. (hereinafter, BUMCO), a dealer of new and used machinery located in Aurora, Illinois.  At that time, the Machine was located in Vandalia, Ohio.

    **Answer:**    This Defendant lacks sufficient knowledge or information to admit or

deny the allegations of this paragraph and therefore demands strict proof thereof.

11.    On or before May 19, 2006, Defendant Global Marine arranged transport of the Machine from Vandalia, OH to Cartagena, Columbia with Defendant Maersk.

    **Answer:**    This Defendant lacks sufficient knowledge or information to admit or

deny the allegations of this paragraph and therefore demands strict proof thereof.

12.    The Machine was in multiple pieces at the time of shipment, and shipment was made in multiple containers.

    **Answer:**    This Defendant lacks sufficient knowledge or information to admit or

deny the allegations of this paragraph and therefore demands strict proof thereof.

13.    One of the containers carrying parts of the Machine was MSKU9138491.

    **Answer:**    This Defendant lacks sufficient knowledge or information to admit or

deny the allegations of this paragraph and therefore demands strict proof thereof.

14.    On or before May 19, 2006, Defendant Maersk arranged for overland transportation of container MSKU 9138491 with Norfolk Southern.

    **Answer:**    Defendant denies the allegations of this paragraph, but admits that on

or about May 25, 2006, Defendant Maersk tendered container MSKU 9138491

to Norfolk Southern for transportation from Cincinnati, Ohio, to Charleston,

South Carolina, under the provisions of a transportation agreement entered into between Maersk and Norfolk Southern, identified as NSPQ 1001.00.

15. At some time between May 22 and May 25, 2006, one or more Defendants caused container MSKU 9138491 to be picked up and loaded on Norfolk Southern train #223 bound for Charleston, South Carolina.

**Answer:** Admits that on or about May 25, 2006, container MSKU 9138491 was tendered to Norfolk Southern at Cincinnati, Ohio, for transportation; that said container was subsequently loaded onto railcar DTTX 721098; and that said railcar was subsequently included in train 223 from Cincinnati, Ohio, to Charleston, South Carolina; but, except as specifically admitted, the allegations of this paragraph are denied.

16. On May 26, 2006, at 9:30pm EDT, seven cars of that Norfolk Southern train, including the car carrying container MSKU 9138491, derailed near Oakdale, Roane County, Tennessee.

**Answer:** Admits that on May 26, 2006, at approximately 9:05 p.m., twelve cars in Norfolk Southern train 223T724 derailed near North Oakdale, Tennessee.

17. As a result of that derailment, container MSKU 9138491 fell from the train and into the Emory River, sustaining substantial damage.

**Answer:** Admits that railcar DTTX 721098 derailed, and that container MSKU 9138491 loaded on that railcar sustained substantial damage, but, except as specifically admitted herein, denies the allegations of this paragraph.

18. According to initial reports from Norfolk Southern to Global Marine, approximately 30% of the cargo from container MSKU 9138491 was salvageable, with the remainder having fallen down an embankment and into the Emory River.

**Answer:** Denied.

19.    Thereafter, Norfolk Southern salvaged a portion of the contents of container MSKU 9138491 from the river, placed salvaged contents in a new container, and sent that container to an unknown nearby location.

    **Answer:**    Admits that the contents of container MSKU 9138491 were placed in another container for continued transportation, but, except as specifically admitted, denies the allegations of this paragraph.

20.    The Plaintiff was not notified of the derailment until June 12, 2006.

    **Answer:**    This Defendant lacks sufficient knowledge or information to admit or deny the allegations of this paragraph, but, in further answering, states that the identity of Plaintiff as the purported owner of the lading which had been trans-ported in MSKU 9138491 was unknown to Norfolk Southern.

21.    Prior to its arrival in Atlanta, Georgia, Norfolk Southern prohibited Plaintiff from mak-ing an inspection of the salvaged contents of container MSKU 9138491.

    **Answer:**    Denies that Norfolk Southern had knowledge of any interest of Plaintiff in the contents of MSKU 9138491 and therefore denies the allegations of this paragraph.

22.    Norfolk Southern then transported the remaining contents of container MSKU 9138491 in a new container to Atlanta, Georgia, at which time Norfolk Southern allowed Riduco and Toshiba, the manufacturer, to inspect the salvaged parts.

    **Answer:**    Admits that the contents of container MSKU 9138491 were loaded into NCCU 291650 and transported from North Oakdale, Tennessee, to Atlanta, Georgia, where the lading was held for inspection and further instructions. Norfolk Southern denies any direct contact with Riduco or Toshiba, but admits that Maersk and representatives designated by Maersk were permitted to inspect the lading.

23. Upon inspection, Riduco learned that various pieces of the Machine were damaged, and that some parts specified on the packing list were in fact missing.

**Answer:** This Defendant lacks sufficient knowledge or information to admit or

deny the allegations of this paragraph and therefore demands strict proof thereof.

24. Thereafter, Defendants caused the Machine to be delivered to Riduco in Columbia.

**Answer:** This Defendant lacks sufficient knowledge or information to admit or

deny the allegations of this paragraph and therefore demands strict proof thereof.

25. Riduco received the damaged and/or missing parts, and as a result, the Machine was not operational.

**Answer:** This Defendant lacks sufficient knowledge or information to admit or

deny the allegations of this paragraph and therefore demands strict proof thereof.

26. After assessing the damage, Riduco requested and received a quote from Toshiba Machine Co. as to the replacement cost for those damaged and missing parts. Toshiba quoted a price of $131,950.00 for replacement; however, many of those parts were not available in stock at that time and would require several months lead time to manu-facture and additional time for delivery to the Plaintiff.

**Answer:** This Defendant lacks sufficient knowledge or information to admit or

deny the allegations of this paragraph and therefore demands strict proof thereof.

27. For several months thereafter, Plaintiff proceeded to repair the Machine via the follow-ing:

a. purchasing and installing new replacement parts;

b. purchasing and installing aftermarket replacement parts when new parts from the original manufacturer were not available;

c. making in-house repairs on other parts when possible.

**Answer:** This Defendant lacks sufficient knowledge or information to admit or

deny the allegations of this paragraph and therefore demands strict proof thereof.

28.   Despite Plaintiff's best efforts, the Machine remained non-operational for more than five months after delivery.

    **Answer:**   This Defendant lacks sufficient knowledge or information to admit or

deny the allegations of this paragraph and therefore demands strict proof thereof.

29.   As a result of the Machine remaining non-operational, Riduco lost more than five months of revenue that otherwise would have been gained from the Machine being in operational condition.

    **Answer:**   This Defendant lacks sufficient knowledge or information to admit or

deny the allegations of this paragraph and therefore demands strict proof thereof.

30.   In addition, the ongoing utility and expected life-cycle of the machine may be impaired due to the differences in configuration of the machine as ordered and the machine as repaired.

    **Answer:**   This Defendant lacks sufficient knowledge or information to admit or

deny the allegations of this paragraph and therefore demands strict proof thereof.

31.   During the period between June 2006 and December 2006, Riduco was in contact with Global Marine Transportation regarding recovery of the value of damages to the Machine.

    **Answer:**   This Defendant lacks sufficient knowledge or information to admit or

deny the allegations of this paragraph and therefore demands strict proof thereof.

32.   On information and belief, at some point during that period, Global Marine Transportation submitted a claim to Maersk for those damages and was assigned claim number 42744/JR.  No payments arising from said claim have been paid to Riduco.

    **Answer:**   This Defendant lacks sufficient knowledge or information to admit or

deny the allegations of this paragraph and therefore demands strict proof thereof.

33.   Thereafter, in November or December 2006, Maersk submitted a claim to Norfolk Southern for those damages and was assigned claim number 838578 I.  Norfolk Southern failed to pay either Maersk or Riduco under that claim.

**Answer:**   Admits that a claim was submitted by Maersk, and, in further answering, states that the claim was declined for the reasons set forth in a letter of declination dated December 4, 2006.

### COUNT 1—BREACH OF CONTRACT—GLOBAL MARINE

34.     Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 33 of this Complaint as if set forth fully herein.

**Answer:**   Defendant adopts and incorporates its responses to paragraphs 1 through 33 of the complaint as though fully set forth herein.

35-45.  The remaining allegations of this count are not directed to this Defendant, nor do they seek any relief from this Defendant.  Therefore, no responses to the remaining allegations of this count are required by this Defendant.

### COUNT 2—NEGLIGENCE—GLOBAL MARINE

46.     Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1-45 of this Complaint as if set forth fully herein.

**Answer:**   Defendant adopts and incorporates its responses to paragraphs 1 through 45 of the complaint as though fully set forth herein.

47-54.   The remaining allegations of this count are not directed to this Defendant, nor do they seek any relief from this Defendant.  Therefore, no responses to the remaining allegations of this count are required by this Defendant.

## COUNT 3—NEGLIGENCE—NORFOLK SOUTHERN

55.   Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 54 of this Complaint as if set forth fully herein.

   **Answer:**   Defendant adopts and incorporates its responses to paragraphs 1

   through 54 of the complaint as though fully set forth herein.

56.   On information and belief, on or before May 22, 2006, either Global Marine or Maersk entered into a contract with Norfolk Southern for the transportation of container MSKU 9138491, with the Plaintiff as the express third-party beneficiary of their contract.

   **Answer:**   States that Norfolk Southern and Maersk entered into an Intermodal

   Transportation Contract effective as of the first day of January, 2000, and that on

   May 25, 2006, Maersk tendered container MSKU 9138491 to Norfolk Southern

   for transportation from Cincinnati, Ohio, to Charleston, South Carolina, pursuant

   to the terms and conditions of that Intermodal Transportation Contract.  Except as

   specifically admitted, the allegations of this paragraph are denied.

57.   Defendant Norfolk Southern operated train #223, and was in control of all material aspects of its operation.

   **Answer:**   Admitted.

58.   Defendant Norfolk Southern owed a duty of care to the Plaintiff to safely carry the Plaintiff's cargo, as the Plaintiff was the third-party beneficiary of the contract between Global Marine and/or Maersk and Norfolk Southern for the transportation of the Machine.

   **Answer:**   Denied.  In further answering, Defendant states that its duties were

   limited to those set forth in the Intermodal Transportation Contract entered into as

   of the first day of January, 2000, between Maersk and Norfolk Southern; denies

   the existence of a duty to Plaintiff; and denies that Plaintiff was an intended third-

   party beneficiary of the contract between Maersk and Norfolk Southern.

59.    The derailment of train #223 could not have happened in the absence of a breach of Defendant Norfolk Southern's duty of care.

**Answer:**    Denied.

60.    As a result of the derailment of train #223, the Plaintiff's cargo fell into the Emory River, sustaining substantial damage and loss of parts.

**Answer:**    Admits that container MSKU 9138491 and its contents were damaged

in the derailment of train 223, but, except as specifically admitted, denies the

allegations of this paragraph.

61.    The loss of the Machine caused the Plaintiff to incur costs in fabricating replacement parts, purchasing replacement parts, costs in repairing the machine, and from lost revenue during the time the Machine was inoperable.

**Answer:**    This Defendant lacks sufficient knowledge or information to admit or

deny the allegations of this paragraph and therefore demands strict proof thereof.

In further answering, Defendant states that the losses and damages described in

this paragraph do not constitute damages which are recoverable or compensable

under the terms and provisions of the Intermodal Transportation Contract or under

federal law as contained in 49 U.S.C. § 14706.

WHEREFORE, Defendant respectfully requests that judgment be entered in favor of this

Defendant and against Plaintiff upon Count 3 of Plaintiff's amended complaint.


### COUNT 4—BREACH OF CONTRACT—MAERSK

62.    Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 61 of this Complaint as if set forth fully herein.

**Answer:**    Defendant adopts and incorporates its responses to paragraphs 1

through 61 of the complaint as though fully set forth herein.

63-69.   The remaining allegations of this count are not directed to this Defendant, nor do they seek any relief from this Defendant.   Therefore, no responses to the remaining allegations of this count are required by this Defendant.

### COUNT 5—BREACH OF CONTRACT—NORFOLK SOUTHERN

70.   Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 69 of this Complaint as if set forth fully herein.

**Answer:**   Defendant adopts and incorporates its responses to paragraphs 1 through 69 of the complaint as though fully set forth herein.

71.   As stated above, Global Marine and/or Maersk contracted with Norfolk Southern for the shipment of container MSKU 9138491 on train #223 to Charleston, South Carolina.

**Answer:**   States that Norfolk Southern and Maersk entered into an Intermodal Transportation Contract effective as of the first day of January, 2000, and that on May 25, 2006, Maersk tendered container MSKU 9138491 to Norfolk Southern for transportation from Cincinnati, Ohio, to Charleston, South Carolina, pursuant to the terms and conditions of that Intermodal Transportation Contract.   Except as specifically admitted, the allegations of this paragraph are denied.

72.   The above specified contract was explicitly entered into by Global Marine and/or Maersk for the benefit of the Plaintiff.

**Answer:**   Denied.

73.   On information and belief, Norfolk Southern's duties under the contract included a duty of care when transporting the cargo, a duty to allow prompt inspection of any damages to the cargo, as well as a duty to promptly honor any claims made for damages to the cargo.

**Answer:**   Denied.   The duties and obligations of Norfolk Southern under its contract are limited to those duties and obligations set forth therein.

74.  As stated above, after the train derailed and container MSKU 9138491 was damaged, Norfolk Southern prevented any inspections of the damaged cargo until several days after the incident.

**Answer:**  Denied.

75.  Further, as stated above, Norfolk Southern has denied the claims made by Maersk on behalf of Global Marine and the Plaintiff for the damages.

**Answer:**  Admits that a claim was submitted by Maersk, and, in further answer-

ing, states that the claim was declined for the reasons set forth in a letter of

declination dated December 4, 2006.

76.  As a result of Norfolk Southern's failure to perform its duties, the Plaintiff has been forced to incur repair costs and diminished use of the Machine without any compensation for the damages.

**Answer:**  Denied.

WHEREFORE, Defendant respectfully requests that judgment be entered in favor of this

Defendant and against Plaintiff upon Count 5 of Plaintiff's amended complaint.


## AFFIRMATIVE DEFENSES

### Allegations Common to All Affirmative Defenses

1.   At all relevant times, Norfolk Southern and Maersk Sealand were parties to an

Intermodal Transportation Contract governing the transportation of containers over the lines of

Norfolk Southern.  Containers transported under the provisions of the Intermodal Transportation

Contract were to be identified by a reference on the bill of lading and/or shipping instructions

to numbers NSPQ 1001, NSPQ 1003, or NSPQ 1005.

2.   On May 25, 2006, Maersk tendered container MSKU 913849 for transportation

from Cincinnati, Ohio, to Charleston, South Carolina, identifying Maersk Sealand as both

the shipper and consignee and referencing NSPQ 1001 (NSPQ-0001001.00) in its shipping

instructions.

    3.    Section 13.A. of the Intermodal Transportation Contract provides:

> It is specifically agreed that the rates and other charges specified in this Agreement or in the Intermodal Rules shall constitute the entire compensation payable to Railway for the services covered by this Agreement.  Subject to foregoing, services or other matters not specifically set forth in this Contract, including freight loss and damage claims, shall be governed by and paid for in accordance with the rules and provisions that would have applied in the absence of this Contract, such as the Association of American Railroads and the Intermodal Rules.  To the extent any such rules or provisions are inconsistent with the terms of this Contract, the terms of this Contract shall govern.

    4.    The Intermodal Transportation Contract states:  "'Intermodal Rules' shall mean the

Norfolk Southern Intermodal Rules Circular #1, or a successor document, in effect the date a

shipment is made pursuant to this Contract, incorporated by reference into this Contract."

(Intermodal Transportation Contract, Section 1.G.)

    5.    Norfolk Southern Intermodal Rules Circular #2, issued November 8, 2000, is the

successor document to Norfolk Southern Intermodal Rules Circular #1.

    6.    The Intermodal Transportation Contract states that "Railway's liability shall be

limited to the replacement value of all lost, damaged or destroyed cargo, with a limit of Two

Hundred Fifty Thousand ($250,000.00) per Container."  (Intermodal Transportation Contract,

Section 13.D.(1).)

    7.    The Intermodal Transportation Contract states that "Shipper shall comply with the

procedures for making claims set forth in the Intermodal Rules."  (Intermodal Transportation

Contract, Section 13.D.(3).)

    8.    Norfolk Southern Intermodal Rules Circular #2, Section 8.3, states, in part:

a) As a condition precedent to any right to recovery for loss, damage, or delay to cargo, a written claim must be filed within 12 months after delivery of a shipment (or if delivery is not made, within 12 months after a reasonable time for delivery). A claim must include a demand for payment of a specific amount and information sufficient to identify the shipment.

. . .

e) NS's liability will not extend beyond the actual physical loss or damage to the cargo itself, plus any costs reasonably incurred in efforts to mitigate the loss or damage. NS will not be liable for attorney fees (except to the extent permitted in "Lawsuits and Arbitrations" in the "Other Rights and Responsibilities" sections below, for interest, or for special, consequential, indirect or punitive damages.

. . .

j) NS will not be liable for any loss, damage, or delay to lading to any party other than the Rail Services Buyer. NS will not be under any obligation to process any claim by any person other than the Rail Services Buyer.

. . .

n) Notwithstanding the foregoing, in the event that the shipment is moving pursuant to an ocean through bill of lading, the maximum liability of Norfolk Southern shall not exceed the lesser of (i) $250,000 or (ii) the aggregate liability of the ocean carrier issuing the ocean though [sic] bill of lading with regard to the respective container.

9. Norfolk Southern Rules Circular #2, Section 8.5.1, states that:

1) In any claim for loss, damage, or delay, claimant shall include:

. . .

c) verification of the amount claimed, such as repair bills or certified invoices, and

d) verification that claimant is the party entitled to payment of the claim.

10.     Norfolk Southern Intermodal Rules Circular #2, Section 8.7.4, "Lawsuits and Arbitration," provides:

> (a)    As a condition precedent to any right of recovery, any lawsuit or arbitration proceeding involving a claim for loss, damage or delay to cargo must be commenced within one year after receipt of written notice from NS declining the claim in full or in part. If suit is not filed or request for arbitration received by NS within that one-year period, claimant shall have no right of recovery.

### First Affirmative Defense

1.     Plaintiff did not file a claim with Norfolk Southern for loss, damage, or delay to cargo containing a demand for payment of a specific amount within twelve months of delivery of the shipment or within twelve months after a reasonable time for delivery of the shipment.

2.     No entity acting on behalf of, or in privity with, Plaintiff filed a claim, as described in the Intermodal Transportation Contract, with Norfolk Southern for loss, damage, or delay to cargo containing a demand for payment of a specific amount within twelve months of delivery of the shipment or within twelve months after a reasonable time for delivery of the shipment.

3.     Plaintiff's claim and cause of action are barred by the failure to comply with the conditions precedent in the Intermodal Transportation Contract.

### Second Affirmative Defense

1.     Plaintiff is not a rail-services buyer as defined in Norfolk Southern Intermodal Rules Circular #2 or a party to the Intermodal Transportation Contract entered into between Maersk Sealand and Norfolk Southern, and therefore lacks standing to assert claims presented in Plaintiff's complaint.

### Third Affirmative Defense

1.    Norfolk Southern issued a declination of Maersk Sealand claim 42744/JR in writing on December 4, 2006.

2.    Norfolk Southern Rules Circular #2, Section 8.7.4, provides that as a condition precedent to any right of recovery, any lawsuit or arbitration involving a claim for loss, damage, or delay of cargo must be commenced within one year after receipt of a written notice from Norfolk Southern declining the claim in full or in part.

3.    Plaintiff's claim and cause of action are barred by the failure to file a lawsuit for recovery of its claim within one year of December 4, 2006, the date upon which the underlying claim was declined in writing.

### Fourth Affirmative Defense

1.    Plaintiff alleges that it contracted with Global Marine Transportation, Inc., for transportation of its property from Vandalia, Ohio, to the foreign nation of Columbia; that Global Marine Transportation, Inc., contracted with Maersk Sealand to provide for transportation of the subject shipment from Vandalia, Ohio, to the foreign nation of Columbia; and that Maersk Sealand arranged with Norfolk Southern for the overland transportation of the container.

2.    Norfolk Southern Intermodal Rules Circular #2 provides, in part, that in the event that a shipment is moving pursuant to an ocean through bill of lading, the maximum liability of Norfolk Southern shall not exceed the aggregate liability of the ocean carrier issuing the ocean through bill of lading with regard to the respective container.

3.    Any liability of Norfolk Southern is limited to the lowest maximum aggregate liability under any through bill of lading issued by either Global Marine Transportation, Inc., or Maersk Sealand.

### Fifth Affirmative Defense

1.    Plaintiff did not file a claim with Norfolk Southern for loss, damage, or delay to cargo containing a demand for payment of a specific amount within nine months of delivery of the shipment or within nine months after a reasonable time for delivery of the shipment.

2.    Shippers electing to transport freight subject to Carmack liability are required to file claims for loss or damage within nine months of delivery of the shipment.

3.    Plaintiff's claim and cause of action are barred by the failure to comply with the conditions precedent in the terms and conditions of carriage applicable to shipments transported subject to the Carmack Amendment.

WHEREFORE, Norfolk Southern respectfully requests that judgment be entered in favor of this Defendant and against Plaintiff, based on one or more of the affirmative defenses set forth above.

Respectfully submitted,

NORFOLK SOUTHERN RAILWAY
COMPANY

By: s/Bruce C. Spitzer
       Bruce C. Spitzer
       Metge, Spitzer & Kreid
       30 West Monroe Street, Suite 630
       Chicago, Illinois  60603
       (312) 580-1710
       ARDC No. 2691604

## DEFENDANT'S L.R. 3.2 DISCLOSURE STATEMENT

Party:       Norfolk Southern Railway Company

Affiliate:     Norfolk Southern Corporation


s/Bruce C. Spitzer
Bruce C. Spitzer
Metge, Spitzer & Kreid
Attorney for Norfolk Southern Railway Company
30 West Monroe Street, Suite 630
Chicago, Illinois  60603
(312) 580-1710
ARDC No. 2691604

## <u>CERTIFICATE OF SERVICE</u>

I, Bruce C. Spitzer, an attorney, certify that on September 8, 2008, I served a copy of the foregoing document on each party of record registered with the CM/ECF system by electronically filing it with the Clerk of the United States District Court for the Northern District of Illinois, who will send notification of such filing to each of them, and by mailing a copy to each party of record not registered with the CM/ECF system, if any.

s/Bruce C. Spitzer