**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RIDUCO, S.A., Colombia corporation, and BEST USED MACHINERY CO., an Illinois corporation, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| A.P. MOLLER-MAERSK A/S, a Danish corporation, and NORFOLK SOUTHERN RAILWAY, INC., a Virginia corporation, | ) ) ) ) |
| Defendants. | ) |

No. 08 C 3008

Judge George W. Lindberg

**MEMORANDUM OPINION AND ORDER**

Before the court are plaintiffs' motion for summary judgment, defendant A.P. Moller-Maersk's ("Maersk") motion for summary judgment, and defendant Norfolk Southern Railway's ("Norfolk Southern") motions for summary judgment. For the reasons stated below, plaintiffs' motion is denied, and Maersk's and Norfolk Southern's motions are granted.

**I.      Factual Background**

The following facts are undisputed. Plaintiff Riduco, S.A. ("Riduco") is a Colombian company that manufactures plastic and metal products. In May 2006, Riduco bought an industrial plastics injection machine from plaintiff Best Used Machinery Co. ("BUMCO"). Riduco and/or BUMCO arranged with Global Marine Transportation ("Global Marine"), a freight transportation broker, to ship the machine from Ohio to Colombia. Global Marine contracted with defendant Maersk, an international shipping company, to transport the machine. Maersk, in turn, arranged for defendant Norfolk Southern to transport the machine by rail from Ohio to South Carolina.

The machine was shipped in multiple pieces, in multiple containers. Maersk initially accepted the containers, and then the containers were loaded onto a Norfolk Southern train. On May 26, 2006, the Norfolk Southern train derailed in Tennessee, and one of the containers sustained damage. After the derailment, some of the contents of that container were salvaged, and eventually were transported to Riduco in Colombia.

Plaintiffs' fourth amended complaint alleges claims against Maersk and Norfolk Southern for breach of contract and of duties under the Carmack Amendment, 49 U.S.C. § 11706. Riduco dismissed the claims it previously had filed against Global Marine. The parties agree that federal jurisdiction exists, either pursuant to 28 U.S.C. § 1331 or § 1332. Plaintiffs, Maersk, and Norfolk Southern all have filed motions for summary judgment.

## II.     Legal Standard

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The moving party bears the initial burden of demonstrating that no material issue exists for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has properly supported its motion, the nonmoving party must offer specific facts demonstrating that a material dispute exists, and must present more than a scintilla of evidence to support its position. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). Where the parties file cross-motions for summary judgment, the court "considers the merits of each cross-motion separately and draws all reasonable inferences and resolves all

factual uncertainties against the party whose motion is under consideration." Murray v. HSBC Auto Fin., Inc., No. 05 C 4040, 2006 WL 2861954, at *2 (N.D. Ill. Sept. 27, 2006); see also McKinney v. Cadleway Properties, Inc., 548 F.3d 496, 504 n.4 (7th Cir. 2008).

**III.    Analysis**

The court first considers whether the Carmack Amendment to the Interstate Commerce Act applies to the shipment in this case. Defendants take the position that the Carmack Amendment does not apply because the shipment was an international and intermodal[1] shipment covered by a "through" bill of lading,[2] citing Capitol Converting Equip., Inc. v. LEP Transp., Inc., 965 F.2d 391 (7th Cir. 1992). Plaintiffs do not dispute that a through bill of lading governed the shipment, but argue that the Carmack Amendment nevertheless applies to the shipment here. This issue is significant because according to defendants, if the Carmack Amendment does not apply, a one-year time bar precludes plaintiffs' claims. By contrast, plaintiffs' claims would be timely under the Carmack Amendment's minimum two-year statute of limitations. See 49 U.S.C. § 11706(e).

The relevant provision of the Carmack Amendment provides:

> A rail carrier providing transportation or service subject to the jurisdiction of the [Surface Transportation] Board under this part shall issue a receipt or bill of lading for property it receives for transportation under this part. That rail carrier and any other carrier that delivers the property and is providing transportation or service subject to the jurisdiction of the [Surface Transportation] Board under this part are liable to the person entitled to recover under the receipt or bill of lading.

---

[1] An intermodal shipment is a shipment that involves transportation by both sea and land. See Indemnity Ins. Co. of N. Am. v. Hanjin Shipping Co., 348 F.3d 628, 631 (7th Cir. 2003).

[2] A "through" bill of lading is a single bill of lading that governs a shipment's entire trip, including both ocean and inland transportation. See Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 25-26 (2004).

> The liability imposed under this subsection is for the actual loss or injury to the property caused by—
>
> > (1) the receiving rail carrier;
> >
> > (2) the delivering rail carrier; or
> >
> > (3) another rail carrier over whose line or route the property is transported
>
> in the United States or from a place in the United States to a place in an adjacent foreign country when transported under a through bill of lading.

49 U.S.C. § 11706(a). The Surface Transportation Board's jurisdiction includes transportation by rail carrier in the United States, "between a place in . . . the United States and a place in a foreign country." 49 U.S.C. § 10501(a)(2).

In <u>Capitol Converting Equip., Inc. v. LEP Transp., Inc.</u>, 965 F.2d 391 (7th Cir. 1992), the Seventh Circuit considered whether jurisdiction under the Carmack Amendment existed for a shipment from a foreign country to the United States under a through bill of lading. Relying on a 1986 Eleventh Circuit case and a 1950 Supreme Court case, the Seventh Circuit held that the Carmack Amendment did not apply to such an import shipment, because the domestic leg of the shipment was not covered by a separate domestic bill of lading. <u>Capitol Converting Equip., Inc.</u>, 965 F.2d at 394 (citing <u>Swift Textiles, Inc. v. Watkins Motor Lines, Inc.</u>, 799 F.2d 697, 701 (11th Cir. 1986) and <u>Reider v. Thompson</u>, 339 U.S. 113, 117 (1950)). Thus, where a separate domestic bill of lading is in place, the domestic leg is treated as a shipment that is separate from the international leg, and the Carmack Amendment applies. By contrast, where a through bill of lading governs, the entire shipment is considered to be a shipment from a foreign country to the United States, and the Carmack Amendment does not apply.

At first blush, it would seem that the Seventh Circuit's decision in <u>Capitol Converting</u>

4

Equip., Inc. is inconsistent with the plain language of the statute that extends the Surface Transportation Board's jurisdiction to shipments "between a place in . . . the United States and a place in a foreign country," since this language suggests that all exports and imports between the United States and all other foreign countries are governed by the Carmack Amendment. See 49 U.S.C. § 10501(a)(2). However, because this language was added as part of the recodification of the Interstate Commerce Act in 1978, and the recodification was not intended to work a substantive change, the language must be read in conjunction with the pre-1978 version of the Interstate Commerce Act. See Keene Corp. v. U.S., 508 U.S. 200, 209 (1993) (courts should not presume that a comprehensive revision "changed the underlying substantive law unless an intent to make such a change is clearly expressed.").

Until 1978, Congress limited the application of the Carmack Amendment to domestic interstate transportation, and transportation "from any point in the United States to a point in an adjacent foreign country." See Aaacon Auto Transp., Inc. v. State Farm Mut. Ins. Co., 537 F.2d 648, 652 n.7 (2d Cir. 1976) (quoting 49 U.S.C. § 20(11)). In 1978, Congress recodified the Interstate Commerce Act and related laws. See Pub. L. No. 95-473, 92 Stat. 1337. In the recodified statute, Congress made transportation under the Carmack Amendment subject to the Interstate Commerce Commission's[3] jurisdiction, and included in that jurisdiction transportation within the United States that is "between a place in . . . the United States and a place in a foreign country." See Pub. L. No. 95-473, 92 Stat. 1337 (49 U.S.C. § 10501).

Despite the omission of the "from . . . to" and "adjacent" language in the 1978

---

[3] The Surface Transportation Board later replaced the Interstate Commerce Commission. See ICC Termination Act of 1995, Pub. L. No. 104-88, 109 Stat. 803.

5

recodification, Congress made clear that it did not intend to work a substantive change in the law. The stated purpose of the 1978 Act was "to revise, codify, and enact *without substantive change* the Interstate Commerce Act and related laws . . . ." Pub. L. No. 95-473, 92 Stat. 1337 (1978) (emphasis added). A House Report similarly described the purpose of the 1978 recodification as "restat[ing] in comprehensive form, *without substantive change*, the Interstate Commerce Act and related laws . . ." H.R. Rep. No. 95-1395, at 4 (1978), reprinted in 1978 U.S.C.C.A.N. 3009, 3013 (emphasis added).

Although the court in <u>Capitol Converting Equip., Inc.</u> did not explain how it reached its conclusion that the Carmack Amendment does not apply to a shipment from a foreign country to the United States under a through bill of lading, that conclusion is consistent with reading the 1978 recodification as working no substantive change from the limited way in which the Carmack Amendment previously was applied. By logical extension of <u>Capitol Converting Equip., Inc.</u>, this court should similarly interpret the application of Carmack Amendment to exports as limited to exports to adjacent foreign countries, notwithstanding the omission of the "adjacent foreign country" language in the 1978 recodification. Based on this interpretation, the court finds that the Carmack Amendment does not apply to the shipment in this case from the United States to Colombia, a non-adjacent foreign country, under a through bill of lading.

The court notes that the circuits are split on the issue of whether the Carmack Amendment applies in cases involving imports under a through bill of lading, the issue considered in <u>Capitol Converting Equip., Inc.</u> The Fourth, Sixth, and Eleventh Circuits have taken the same position as the Seventh Circuit: that the Carmack Amendment does not apply under such circumstances. See <u>Am. Rd. Serv. Co. v. Consol. Rail Corp.</u>, 348 F.3d 565, 568 (6th

Cir. 2003); Shao v. Link Cargo (Taiwan) Ltd., 986 F.2d 700, 703 (4th Cir. 1993); Swift Textiles, Inc. v. Watkins Motor Lines, Inc., 799 F.2d 697, 701 (11th Cir. 1986). The Second and Ninth Circuits have taken the opposite view. See Regal-Beloit Corp. v. Kawasaki Kisen Kaisha Ltd., 557 F.3d 985, 995 (9th Cir. 2009); Sompo Japan Ins. Co. v. Union Pacific R.R. Co., 456 F.3d 54, 68-69 (2d Cir. 2006). The Supreme Court granted certiorari in Regal-Beloit Corp. v. Kawasaki Kisen Kaisha Ltd. See No. 08-1553, 2009 WL 1725959 (Oct. 20, 2009), but has not yet issued a decision.

The court further notes that even if the Carmack Amendment applied to the shipment in this case, it would not apply to defendant Maersk, an ocean carrier. As stated above, the relevant provisions of the Carmack Amendment apply to "rail carrier[s]." The statute defines a "rail carrier" as "a person providing common carrier railroad transportation for compensation," with certain exceptions not relevant here. See 49 U.S.C. § 10102(5); see also id. § 10501. The court agrees with the Second Circuit's conclusion that this definition does not encompass carriers such as Maersk, which arrange for rail transportation but do not themselves own or operate a railroad. See Rexroth Hydraudyne B.V. v. Ocean World Lines, Inc., 547 F.3d 351, 363 (2d Cir. 2008) ("we do not construe '[a] rail carrier providing transportation' to include another, separate class of common carriers that do not own or operate rail lines or other equipment used in connection with a railroad."). Cf. Regal-Beloit Corp. v. Kawasaki Kisen Kaisha Ltd., 557 F.3d 985, 993-94 (9th Cir. 2009) (holding that an ocean carrier that arranged for railroad transportation and itself had contact with the shipped goods qualified as a "rail carrier" under the statute).

Since the Carmack Amendment does not apply, the terms of the parties' agreements govern the shipment. The court turns to Maersk's motion for summary judgment, which urges

7

the court to find that plaintiffs' claims against Maersk are time-barred under the bill of lading. Maersk's statement of facts asserts the following facts, supported by affidavits:

- Maersk's confirmation to Global Marine for the booking of the shipment stated that the shipment was "subject to the terms, conditions and exceptions of the governing Maersk Line Combined Transport Bill of Lading," and stated that those terms, conditions and exceptions were accessible on Maersk's website.

- The "Combined Transport Bill of Lading" was Maersk's standard form bill of lading, issued by Maersk in the normal course of its business. Maersk published the terms and conditions of the bill of lading on its website.

- Maersk's standard bill of lading provided, in pertinent part: "the Carrier shall be discharged from all liability whatsoever unless suit is brought within one year . . . delivery [of the goods] or the date when they should have been delivered."

- Prior to the derailment, delivery of the containers to Riduco in Colombia was estimated for June 6, 2006.

- The salvaged portion of the shipment was delivered to Riduco in Colombia on October 24, 2006.

- Riduco filed this action on May 23, 2008.

Plaintiffs did not respond to Maersk's statement of facts, and accordingly these facts are deemed admitted. See LR 56.1(b)(3)(C).

The undisputed facts establish that Riduco filed this action more than one year after delivery was expected and completed. Accordingly, plaintiffs' claims against Maersk are time-barred. Maersk's motion for summary judgment is granted.

Next, the court considers Norfolk Southern's motion for summary judgment. As an initial matter, the court notes that Norfolk Southern filed a single document to serve both as its

8

response to plaintiffs' statement of facts in support of their motion for summary judgment, and as its submission in support of its own motion for summary judgment. This practice makes it difficult for the court to consider the various motions separately. The court will construe Norfolk Southern's statement of additional facts to be its statement of facts in support of Norfolk Southern's motion for summary judgment, and will disregard all other "facts" to which Norfolk Southern refers in its briefing.

Norfolk Southern asserts the following facts in support of its motion for summary judgment:

- When Maersk tendered Riduco's containers to Norfolk Southern, the waybill contained the reference "NSPQ-0001001.00."

- The "NSPQ-0001001.00" number in the waybill signifies that the goods were being shipped under the Intermodal Transportation Contract between Norfolk Southern and Maersk.

- The Intermodal Transportation Contract requires shippers to "comply with the procedures for making claims set forth in the Intermodal Rules." The contract defines "Intermodal Rules" as "Norfolk Southern Intermodal Rules Circular #1, or a successor document, in effect the date a shipment is made pursuant to this Contract, incorporated by reference into this Contract." Norfolk Southern Intermodal Rules Circular #2 was issued on November 8, 2000, and is the successor document to Norfolk Southern Intermodal Rules Circular #1.

- Norfolk Southern Intermodal Rules Circular #2 provides, in pertinent part:
  As a condition precedent to any right of recovery, any lawsuit or arbitration proceeding involving a claim for loss, damage or delay to cargo must be commenced within one year after receipt of written notice from [Norfolk Southern] declining the claim in full or in part. If suit is not filed or request for arbitration received by [Norfolk Southern] within that one-year period, claimant shall have no right of recovery.

- Norfolk Southern Intermodal Rules Circular #2 provides that its terms and conditions

apply to all shipments on Norfolk Southern, unless Norfolk Southern agrees to different terms in writing.

- Maersk submitted a claim to Norfolk Southern relating to the damage to Riduco's container. Norfolk Southern declined Maersk's claim on December 4, 2006.

Based on these facts, Norfolk Southern argues that plaintiffs' claims were untimely.

Plaintiffs attempt to deny that the Intermodal Transportation Contract governed the shipment in this case. They respond to Norfolk Southern's statements of fact regarding the Intermodal Transportation Contract and Intermodal Rules Circular #2 in conclusory and confusing fashion, as follows:

> Denied. The ITA is not a legal binding contract as to Riduco nor were its terms ever offered to Riduco. This is a statement of law not of fact and should be stricken. Riduco never received any notice of election regarding Carmack Liability. (SOF in support of Summary Judgment for the Fourth Amended Complaint ¶ 14. Maersk failed to offer any response it is therefore admitted and Norfolk filed an improper response and it is therefore admitted.)

Paragraph 14 of plaintiffs' statement of facts in support of their motion for summary judgment, which plaintiffs repeatedly reference in their responses to Norfolk Southern's statements of fact, states merely: "At no time did the Defendants offer the Plaintiffs the option of Carmack liability in any of the Bills of Lading or any other document provided to the Plaintiffs." Plaintiffs offer no citations to the record to support their denials, as required by Local Rule 56.1(b)(3)(B).

Aside from their bare conclusion in their responses to Norfolk Southern's statements of fact noted above, plaintiffs offer no argument on the issue of the application of the Intermodal Transportation Contract and the Intermodal Rules Circular, as an alternative to their Carmack

Amendment argument.[4] Instead, they rest on their argument that the Carmack Amendment governs this case. The court finds that plaintiffs have waived the argument that the terms contained in the Intermodal Transportation Contract and the Intermodal Rules Circular do not apply here. See Robyns v. Reliance Standard Life Ins. Co., 130 F.3d 1231, 1237 (7th Cir. 1997) (a "party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered."); Cent. States, SE & SW Areas Pension Fund v. Midwest Motor Express, Inc., 181 F.3d 799, 808 (7th Cir. 1999) ("Arguments not developed in any meaningful way are waived.").

Even if the court considered arguments plaintiffs make in connection with other motions, they fail to show that the Intermodal Transportation Contract and the Intermodal Rules Circular do not apply. For example, although plaintiffs argue in support of their own motion for summary judgment that the court should disregard limitation of liability terms found in Norfolk Southern Intermodal Rules Circular #2, this argument is based on the assumption that the Carmack Amendment applies. In addition, although plaintiffs argue in that brief that Norfolk Southern cannot rely on the terms of the Intermodal Rules because reasonable notice of the terms was not provided to the shipper, plaintiffs offer no evidence that Maersk – the shipper in this leg of the shipment – was unaware of the terms.

The one-year limitation period contained in Norfolk Southern Intermodal Rules Circular #2 applies, starting from the date of receipt of Norfolk Southern's written notice that it was

---

[4] The court assumes that docket entry 119, titled "Reply to Memorandum in Support of Motion for Summary Judgment," is plaintiffs' memorandum in response to Norfolk Southern's motion for summary judgment. Plaintiffs' many filings in this case are confusing, as plaintiffs labeled each of their responses and replies as a "reply."

declining the claim in full or in part.  Norfolk Southern contends that it declined Maersk's claim in a December 4, 2006 letter, and that plaintiffs had one year from that date in which to file this lawsuit.

Plaintiffs argue that a question of fact exists as to whether Norfolk Southern's December 4, 2006 letter actually declined Maersk's claim, because the letter left the claim open pending the submission of additional material.  The court disagrees.  It is true that in its December 4, 2006 letter, Norfolk Southern stated that it had not received certain information, and that the claim would remain on file.  However, the letter also stated that until Norfolk Southern received the information, Maersk's "claim shall be considered respectfully declined in its entirety." Plaintiffs offer no legal support for their conclusory argument that this language was ineffective under the circumstances.  The Seventh Circuit has recognized a similar claim disallowance as sufficient.  See Yamazen U.S.A., Inc. v. Chicago & NW Transp. Co., 790 F.2d 621, 622, 624 n.1 (7th Cir. 1986) (agreeing with the district court's conclusion that a railroad's letter informing a claimant that it would not act on a claim because of a lack of information amounted to a "disallowance" because otherwise, "the period of limitations on suits might be extended indefinitely.").  Norfolk Southern has established that it notified Maersk on December 4, 2006 that it was declining Maersk's claim.

Since Riduco did not file its claims against Norfolk Southern within one year after December 4, 2006, the claims are barred.  The court notes that it would reach the same result if the bill of lading supplied the terms, as discussed above in relation to Maersk's motion for summary judgment.  Norfolk Southern's motion for summary judgment is granted.

Finally, because the Carmack Amendment does not apply in this case, plaintiffs' motion for summary judgment on their claims under the Carmack Amendment is denied.

**ORDERED:** Plaintiffs' motion for summary judgment [97] is denied. Defendant A.P. Moller-Maersk A/S's motion for summary judgment [106] is granted. Defendant Norfolk Southern Railway's motions for summary judgment [111, 113] are granted. Plaintiffs' motion to strike Norfolk Southern's Rule 56.1 responses [122] and motion to strike Maersk's Rule 56.1 responses [126] are denied as moot: in arriving at its decision, the court did not rely on the responses to which plaintiffs object. Judgment in favor of defendants and against plaintiffs will be set forth on a separate document and entered in the civil docket. See Fed. R. Civ. P. 58(a); 79(a).

ENTER:

George W. Lindberg
Senior United States District Judge

DATED:     December 7, 2009